## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | |
|---|---|
| PAYLESS SHOESOURCE WORLDWIDE, INC., ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 05-4023-JAR |
| ) ) ) | |
| v. ) ) | |
| TARGET CORPORATION and ) TARGET BRANDS, INC., ) ) | |
| Defendants. ) | |

## <u>ORDER</u>

This matter comes before the court upon plaintiff's Motion to Substitute Damage Expert (Doc. 204) and Emergency Motion for Stay of Pending Discovery and Memorandum in Support (Doc. 203).  Defendants have filed a response (Doc. 206) to both motions, to which plaintiff has filed a reply (Doc. 210).  These matters are thus fully briefed and ripe for disposition.  Additionally pending before the court is plaintiff's Motion for Extension to Time to File Objections to Defendants' Joint Supplemental Responses to Plaintiff's Third Request for Production of Documents, Plaintiff's Fourth Request for Production of Documents, Plaintiff's Requests for Admission and Plaintiff's First Set of Interrogatories to Defendants (Doc. 203).  Defendants have not filed a response to this motion and their time to do so has passed.[1]

---

[1] *See* D. Kan. 6.1(d)(1).

### I.      Motion to Substitute Damage Expert (Doc. 204)

As detailed below the court grants in part and denies in part plaintiff's motion to substitute its damage expert.

### A.      Background

Payless served its Expert Report of Charles E. Finch, in support of its damages claim, on March 24, 2006.  On July 13, 2006, the court conducted the parties' Final Pretrial Conference.  On August 4, 2006, the court entered the parties' Final Pretrial Order and entered a Memorandum and Order resolving several pending discovery motions, including allowing plaintiff to supplement Mr. Finch's expert report by August 25, 2006 and reopening discovery until October 3, 2006.

In his March 24, 2006 report, Mr. Finch stated that without certain documents, including "[d]ocuments reporting or containing information on financial data for footwear products and accessories for two years prior to the start of Target's advertising campaign using the words 'PAY LESS' or 'PAYLESS' through present" and "[d]ocuments reporting or containing information on financial data for Target as a whole" he could not "calculate any potential damages owed to Payless WW as a result of the trademark infringement and dilution" but "reserve[d] the right to update and supplement [his] opinions as relevant information is provided by Target."[2]  In his August 25, 2006 supplemental report, Mr. Finch stated he had not "received information relevant to Defendants' sales, profits, costs, licenses and other potentially relevant data" but used "certain summary information on Defendants' shoe sales . . . gathered by a third party" to formulate his opinion.  This report also stated that he had "not received information from the Defendants to calculate profits on

---

[2]Memorandum in Support (Doc. 205) at p. 2.  Plaintiff failed to include Mr. Finch's Expert Report and supplement as attachments to the instant motion.  However, defendants have attached these as exhibits to their response.  *See* Response (Doc. 209) at (Exhibit D) p. 7.

those sales" but "If [Mr. Finch] receive[d] additionally relevant information and/or a rebuttal report from the Defendants [he would] revise this report and/or respond to the rebuttal as requested by Counsel."[3] On September 12, 2007, defendants deposed Mr. Finch[4] and on September 21, 2006 filed a Motion to Strike The Expert Report of Charles E. Finch.[5]

During the reopened window of discovery, and after, the parties' filed various motions including plaintiff's Motion to Compel (Doc. 98) which sought production of a 30(b)(6) witness to testify about certain financial and business topics regarding Target's footwear department.  On November 17, 2006 the court granted in part and denied in part plaintiff's Motion to Compel (Doc. 98) and ordered defendants to produce Rule 30(b)(6) witnesses to testify about certain financial noticed topics.  The court also denied without prejudice defendants' Motion to Strike the Expert Report of Charles E. Finch (Doc. 93) noting that Mr. Finch would likely use the information provided by the 30(b)(6) depositions to supplement and amend his expert report.  Thus the court ordered plaintiff to submit an amended expert report after the parties conducted the 30(b)(6) depositions and extended discovery for the limited purposes of deposing Mr. Finch and Mr. Gorowky, defendants' own expert.[6]  On December 7, 2006, the parties filed a joint motion seeking the court's permission to postpone the 30(b)(6) deposition of defendants' corporate representatives

---

[3]*Id.* at (Exhibit E) at p. 1-2.

[4]Response (Doc. 209) at p. 2.

[5]Motion to Strike (Doc. 93).

[6]*See* Memorandum and Order (Doc. 142).

until the court had resolved several pending discovery motions related to documents requests similar

in nature to the 30(b)(6) noticed topics.[7]

On June 29, 2007 the court resolved various other pending discovery disputes and, among

other things, ordered defendants to produce documents responsive to certain financial documents

requests, similar to those 30(b)(6) noticed topics.   On August 10, 2007 the parties filed a Joint

Motion to Amend Scheduling Order (Doc. 195) which, after consulting with the trial judge,

Honorable Julie A. Robinson, the court granted and, in so doing, adopted the following deadlines:

> (1) By August 27, 2007, defendants will supplement their responses and document
> production pursuant to the court's June 29, 2007.
> (2) By August 31, 2007, defendants will produce and plaintiff will depose Ms. Gerber
> and Mr. Johnson.
> (3) By September 15, 2007, the parties will complete their Rule 30(b)(6) depositions
> regarding topics 36-41 as previously ordered by the court.
> (4) By October 5, 2007 plaintiff will supplement its expert damages report.
> (5) By October 26, 2007 defendants will supplement their expert damages report.
> (6) By November 9, 2007 the deposition of plaintiff's damage expert will be completed.
> (7) By November 30, 2007 the deposition of defendants' damages expert will be
> completed.
> (8) By December 28, 2007 the parties will file their dispositive motions, if any.
> After consultation with the Honorable Judge Julie Robinson's chambers, the court finds this
> schedule reasonable and sets the parties' trial date for November 18, 2008.[8]

On August 15, 2007, defendants produced 22,000 pages of documents concerning certain

financial information relevant to document requests compelled by order of this court.   On

September 15, 2007, the parties were scheduled to conduct defendants' Rule 30(b)(6) depositions

regarding topics 36-41 pertaining to financial and business matters.   However, three days before,

on September 12, 2007, plaintiff learned that its designated damages expert, Charles E. Finch, had

---

[7]*See* Joint Emergency Motion to Reset Scheduling Deadlines For Deposition of Target
Witness on 30(b)(6) Topics 36-41 (Doc. 165).

[8]*See* Amended Scheduling Order (Doc. 201).

a conflict of interest and was withdrawing.  On September 13, 2007, plaintiff notified defendants of Mr. Finch's conflict and withdrawal and requested additional time to conduct the impending 30(b)(6) depositions and permission to substitute another expert for Mr. Finch.  Defendants agreed to postpone the impending 30(b)(6) depositions, but declined to consent to the substitution.  On September 18, 2007, Mr. Finch executed an affidavit concerning his withdrawal regarding "present and anticipated future irreconcilable issues" that prevented him from "acting as an expert witness in this case"[9] and on September 29, 2007, more than a week later, plaintiff filed the instant motion.

### B.      Parties' Contentions

Plaintiff contends it will suffer great prejudice if the undersigned does not permit it to substitute another expert for Mr. Finch because (1) plaintiff's attorneys would not have the advice and counsel of its testifying damages experts in preparing for the defendants' 30(b)(6) depositions and (2) without substitution, plaintiff cannot present damages testimony at trial.

In turn, defendants contend that to defendants' detriment "plaintiff is simply dissatisfied with Mr. Finch and is trying to ditch Mr. Finch to get a second bite at the apple with a different expert."[10] Should the undersigned permit substitution, defendants request, in the alternative, that "any new expert should be limited to the same scope of retention and analysis as Mr. Finch, plaintiff should reimburse defendants' expenses for work that has been related to Mr. Finch, and any new schedule should provide sufficient time for summary judgment briefing."

### C.      Standard

---

[9]Memorandum in Support (Doc. 205) at (Exhibit A).

[10]Response (Doc. 209) at p. 2.

Fed. R. Civ. P. 16(b) provides in part that a scheduling order "shall not be modified except upon a showing of good cause[.]" In turn, Rule 16(e) provides that a pretrial order "shall be modified only to prevent manifest injustice." Here, both parties appear to believe that good cause is the applicable standard as to the substitution of Mr. Finch.[11]

In *Sithon Maritime Co. v. Holiday Mansion*, a case from the District of Kansas cited by both parties, the court allowed plaintiff to substitute its expert who was "unavailable to provide further services as a witness" given the deadlines set by the court.[12]  The court stated that it would not "be inclined to allow the substitution of an expert witness without substantiated, good reason having been shown for doing so."[13]  While the court finds *Sithon* persuasive in some respects, the court allowed substitution *prior* to the filing of the  parties' pretrial order.[14]  In contrast, here the parties' pretrial order has long been entered.  So too, the *substitution* for Mr. Finch is not part of the discovery the court permitted after the filing of the parties' pretrial order.  Accordingly, rather than good cause, the court will evaluate the substitution for Mr. Finch under the standard for modification of the parties' pretrial order.

The party seeking to amend the pretrial order has the burden to demonstrate that manifest injustice would otherwise occur.[15]  Whether to modify the pretrial order lies within the court's

---

[11]Memorandum in Support (Doc. 205) at p. 5; Response (Doc. 209) at p. 3.

[12]No. 96-2262-EEO, 1998 U.S. Dist. LEXIS 11822, at * 3 (D. Kan. July 30, 1998).

[13]*Id.* at *4.

[14]*See* Case No. 96-2262-EEO, Memorandum and Order (Doc. 232)(granting motion for leave to substitute expert, entered on July 30, 1998); Pretrial Order (Doc. 303) (entered February 17, 1999).

[15]*Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002).

discretion.[16]  In exercising this discretion, the court should consider the following factors: (1) disruption to the orderly and efficient trial of the case by inclusion of the new issue; (2) bad faith by the party seeking to modify the order; (3) prejudice or surprise to the party opposing trial of the issue; (4) the ability of the party to cure any prejudice.[17]  When applying these factors, the court must strive to assure "the full and fair litigation of claims."[18]

## D.      Discussion

Even under the manifest injustice standard, the court finds plaintiff has demonstrated that without amending the pretrial order to permit the substitution of its damages expert, a manifest injustice will occur because plaintiff will be unable to present expert testimony regarding damages at trial.

### 1.      Disruption to the orderly and efficient trial of the case

Here, defendants argue that substitution for Mr. Finch will have a detrimental effect regarding the deadlines for completion of all remaining pretrial activities, including the filing of dispositive motions.  The court agrees.  However, considering the parties' current trial date is not until November 18, 2008, the court finds this effect will not significantly disrupt the actual resolution of this case.  This is not to suggest that a party in this case may actively continue discovery unless specifically allowed by this court or unopposed by the other side merely because of the parties' trial date.[19]  Rather, simply for the purposes of this motion, the court finds the

---

[16]*Id.*

[17]*Koch v. Koch Inds., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000)(citation omitted).

[18]*Joseph Mfg. Co., Inc. v. Olympic Fire Corp.*, 986 F.2d 416, 420 (10th Cir. 1993).

[19]*See e.g.*, Memorandum and Order (Doc. 201) at p. 3.

November 18, 2008 trial date allows sufficient time for the substitution of another expert for Mr. Finch without unnecessarily disrupting the orderly and efficient resolution of this case.

### 2.      Bad faith by the party seeking to modify the order.

The court finds plaintiff does not seek to substitute an expert for Mr. Finch in bad faith.  Mr. Finch's affidavit explains that he became employed by Alvarez & Marsal Dispute Analysis & Forensics Services, LLC ("A & M") as managing director on March 15, 2007.  However, it was not until later that Mr. Finch discovered that this new relationship created "present and irreconcilable issues" that prevented him from acting as an expert witness in this case.[20]  Defendants argue that Mr. Finch's affidavit is "so vague that it is useless."[21]  While the court agrees that Mr. Finch and Payless have not detailed the reasons for his apparent conflict, Mr. Finch's affidavit states he is "not at liberty to inform Payless of the nature of [his] conflicts."[22]

In *Sithon Maritime Co. v. Holiday Mansion*, the original expert averred that he could no longer participate as an expert in the case due to the court's scheduling requirements.[23]  Accordingly, the court granted plaintiff's motion to substitute another expert on the condition that plaintiff reimburse defendant for "part of the expense it . . . incurred for its expert witness[.]"  In doing so, the court discounted defendant's contention that plaintiff sought to substitute experts as "merely as

---

[20]Memorandum in Support (Doc. 205) at (Exhibit A).

[21]Response (Doc. 209) at p. 3.

[22]Memorandum in Support (Doc. 205) at (Exhibit A).

[23]No. 96-2262-EEO, 1998 U.S. Dist. LEXIS 11822, at * 3 (D. Kan. July 30, 1998).

a ploy to avoid criticism" of defendant's expert and  noted that it could not fault plaintiff for its original expert's conflict with the court's scheduled deadlines.[24]

In the instant case, the court can ascertain no bad faith on the part of plaintiff.  Mr. Finch's affidavit states that he did not inform plaintiff of his conflict until September 12, 2008.  While plaintiff could have filed the instant motion closer to the revelation of Mr. Finch's conflict, this slight delay does not amount to bad faith.

### 3.    Prejudice or surprise to the opposing party and the ability of the party to cure any prejudice.

Yet, an absence of bad faith on the part of plaintiff does not mitigate any prejudice defendants would suffer should the court permit plaintiff to substitute experts at this late date.  As defendants point out they have already deposed Mr. Finch. Indeed, defendants assert they have spent $50,703 on attorneys' fees related to preparing to depose and deposing Mr. Finch, preparing their own rebuttal expert, Don Gorowsky, and seeking to strike Mr. Finch as an expert.  Defendants also list $15,515.51 in rebuttal witness fees, court reporter costs, and travel expenses, amounting to $66,218.51 in total expenses.[25]  As to expenses and curing prejudice the court in *Sithon* noted:

> Defendant has shown that it would incur some prejudice by the substitution; inasmuch as it has already incurred expense for its own expert to review and provide a written critique against the testimony of [the would-be substituted expert].  The court can cure that prejudice, however, by requiring plaintiff to reimburse defendant for a reasonable amount of such expense.  Since the motion seeks relief to benefit plaintiff through no fault of defendant, the latter should not bear all the expense it has incurred.[26]

---

[24] *Id.* at * 4.

[25] Response (Doc. 209) at p. 9.

[26] *Sithon,* 1998 U.S. Dist. LEXIS 11822 at *4-5.

Here, plaintiff contends that because the court has already set a new and separate discovery scheduled regarding Mr. Finch's disclosure of a supplemental expert report and his subsequent second deposition, defendants would suffer no prejudice at having to conduct this discovery with a substituted expert. Indeed, plaintiff argues that if the court were to award defendants their expenses the court would actually reward defendants for their failure to previously produce the responsive financial documents.

Plaintiff misunderstands, or perhaps misconstrues, the situation. Defendants are not seeking reimbursement for the costs associated with the defending the *future* expert report ordered by the undersigned. Rather, defendants seek the reimbursement of costs it futilely expended to rebut Mr. Finch's opinions. Assuming, in an alternate scenario, defendants had produced the 22,000 pages of financial documents *prior* to the disclosure and report of Mr. Finch and Mr. Finch's conflict and necessary withdrawal arose, as it does here, with the pretrial order entered and scant discovery left to complete, a substituted expert would still be required to issue another report and defendants would still incur future costs to defend against the new expert. Whatever defendants' culpability regarding the need for a supplemental expert report and subsequent deposition, defendants had no fault in the *withdrawal* of Mr. Finch and the fact remains that defendants expended great time and resources to defend against a now withdrawn expert.

As in *Sithon*, "[s]ince the motion seeks relief to benefit plaintiff through no fault of defendant[s], the latter should not bear all the expense it has incurred." That defendants should not bear all the expense of defending against Mr. Finch's report, does not mean all $66,218.51 in total expenses should be reimbursed. In *Sithon*, the nonmoving party submitted an affidavit demonstrating it has incurred approximately $37,000 for the services of their own expert who

10

critiqued the withdrawn expert.  The court ordered plaintiff, "as a condition of the substitution" to reimburse *half* of that amount to defendant "as reasonable expense attributable to the review and critique of the report of" the withdrawn expert.

Plaintiff, while disagreeing over whether the court should grant defendants' fees at all, does not dispute defendants' calculations and total.  However, upon review of defendants' Fees Chart, the court finds a significant amount of the fees stated relate to defendants' Motion to Strike the Expert Report of Charles E. Finch (Doc. 93).[27]  Upon review of the defendants' Cost Chart the court is unable to tell what, if any, costs are attributable to this Motion to Strike.[28]  As discussed above, the court denied this Motion to Strike without prejudice, finding that the financial information defendants had declined to disclose would likely be used by Mr. Finch to supplement his expert report.[29]  Accordingly, the court finds it would be inequitable to require plaintiff to cover costs associated with defendants' Motion to Strike (Doc. 93) because the basis for this motion, i.e., Mr. Finch's recitation of third-party data supplied by plaintiff, is largely attributable to defendants' own failure to provide plaintiff, and thus Mr. Finch, with necessary financial information.  As such, within eleven (11) days of this order defendants shall submit to the court a revised Fees Chart and Costs Chart omitting all time and costs associated with the Motion to Strike (Doc. 93).  Assuming

---

[27]Response (Doc. 209) at (Exhibit B).

[28]*Id.* at (Exhibit C).

[29]Memorandum and Order (Doc. 142) at p. 14.

the court finds this new submission in order, the court will then require plaintiff to reimburse defendants for a reasonable sum of this new amount as a condition of substitution.[30]

### 4.    Scope of Substituted Expert's Disclosure

Defendants do not dispute that any substituted expert should be allowed to review the recently produced 22,000 pages of documents regarding defendants' financial condition.  However, defendants urge the court to narrow the substituted expert disclosure so as to prevent expansion upon the original limitations set forth by Mr. Finch.  Defendants point to *Cardiac Science v. Koninklijke Philips Elecs.*, a recent case from the District of Minnesota, wherein the court permitted substitution of plaintiff's expert so long as he did not "testify in a manner contrary to or inconsistent with" the previous expert.[31]  Defendants also cite a string of cases wherein other courts have similarly limited the substituted expert's testimony.[32]  Thus, defendants ask that any new expert report "should be bound by (1) the scope of retention between plaintiff and Mr. Finch, as stated in his reports and deposition; (2) Mr. Finch's assertion of applicable governing standards; (3) and Mr. Finch's choice of relevant years of analysis."[33]

Plaintiff contends, and the court agrees, that the instant situation differs significantly from the cases cited by defendants.  Here, the court found defendants' failure to disclose certain relevant

---

[30]The court will not consider any expenses and costs associated with defendants' response to the instant motion as defendants suggest.  *See* Response (Doc. 209) at p. 9 n. 3. Considering the court's partial grant of the instant request, reimbursing defendants' for their effort in this matter would not be appropriate.

[31]2006 WL 3836137 (D. Minn. Dec. 22, 2006); Plaintiff's Memorandum in Support (Doc. 205) at (Exhibit G).

[32]Response (Doc. 209) at p. 10-11.

[33]*Id.* at p. 11.

financial information severely impacted Mr. Finch's ability to craft a complete report and supplemental report.  In its November 17, 2006 order, in denying without prejudice defendants' Motion to Strike Mr. Finch, the court stated it:

> believes that Payless' damage expert, Charles E. Finch, would likely use the information revealed in the above discovery grant, and should thus be required to submit a new expert report setting forth all *new* opinions regarding damages. If defendants still wish to strike plaintiff's expert's report, defendants may file such a motion after receiving plaintiff's expert's amended report.[34]

The court then required plaintiff to submit "an amended report of Charles E. Finch" to defendants after the disclosure of certain financial documents and conduction of 30(b)(6) testimony. Similarly, based on the *joint* motion by the parties, the court ordered separate deadlines for the supplementation of plaintiff's expert damages report, defendants' supplemental expert damage report and the deposition of plaintiff's damage expert after the production of these responsive documents.[35]

At this point the court will not enter an order requiring any substituted expert to keep within the limits of Mr. Finch's previous expert reports, because the court clearly allowed Mr. Finch the opportunity to supplement, and perhaps modify, his previous opinion based on the newly disclosed information.  The court will require the same of any substituted expert.  That is not to say that defendants are prevented from filing an *in limine* motion regarding the report and opinions of the substituted expert.  However, the court will not now unnecessarily limit the substituted expert in a manner it did not limit Mr. Finch.

---

[34]Memorandum and Order (Doc. 142) at p. 14 (emphasis added).

[35]*See* Amended Scheduling Order (Doc. 201).

In conclusion, the court believes the resolution of the issue in the manner previously described will assure "the full and fair litigation of claims."[36]

## II. Plaintiff's Emergency Motion for Stay of Pending Discovery and Memorandum in Support (Doc. 203) and Motion for Extension of Time (Doc. 202).

The court agrees that the substitution for Mr. Finch requires amending the parties' remaining pretrial deadlines.[37]   Accordingly, the court adopts the following deadlines:

(1) By **December 20, 2007**, the parties will complete defendants' Rule 30(b)(6) depositions regarding topics 36-41 as previously ordered by the court;
(2) By **January 9, 2008** plaintiff will serve its substituted damages expert's disclosures and report pursuant to the requirements of Fed. R. Civ. P. 26(a)(2);
(3) By **February 6, 2008** defendants will serve their damages expert's Rule 26(a)(2) disclosures and report;
(4) By **February 20, 2008** any deposition of plaintiff's substituted expert will be completed;
(5) By **March 5, 2008** any deposition of defendants' damage expert will be completed;
(6) By **April 16, 2008** the parties will file their dispositive motions, if any; and
(7) The parties' trial date remains set for **November 18, 2008**.

As to plaintiff's Motion for Extension of Time (Doc. 202) to file objections to defendants' August 15, 2007 production of documents, defendants have not filed a response to this motion and the time to do so pursuant to D. Kan. Rule 6.1(d) has passed.

Normally, "[t]he failure to file a brief or response within the time specified within Rule 6.1(d) shall constitute a waiver of the right thereafter to file such a brief or response, except upon a showing of excusable neglect. . . .  If a respondent fails to file a response within the time required

---

[36]*Joseph Mfg. Co., Inc. v. Olympic Fire Corp.*, 986 F.2d 416, 420 (10th Cir. 1993).

[37]The court notes that despite seeking expedited briefing on all these issues, plaintiff took its full reply period to brief these matters.

by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."[38]

Accordingly, the court grants plaintiff's motion. Within eleven days of this order, plaintiff may file any "objections" to defendants' August 15, 2007 document production and responses.

**IT IS THEREFORE ORDERED** plaintiff's Motion to Substitute Damage Expert (Doc. 204) is granted in part and denied in part as set forth in this order. Within eleven (11) days of this order, defendants will file a revised Fee Chart and Cost Chart as previously described in this order.

**IT IS FURTHER ORDERED** that plaintiff's Emergency Motion for Stay of Pending Discovery and Memorandum in Support (Doc. 203) is denied as moot. The parties' amended schedule and completion of remaining pretrial activities is adopted as set forth in this order.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Extension to Time to File Objections to Defendants' Joint Supplemental Responses to Plaintiff's Third Request for Production of Documents, Plaintiff's Fourth Request for Production of Documents, Plaintiff's Requests for Admission and Plaintiff's First Set of Interrogatories to Defendants (Doc. 203) is granted as unopposed. Within eleven (11) days of this order, plaintiff may file any "objections" to defendants' August 15, 2007 document production and responses.

**IT IS FURTHER ORDERED** that discovery is not extended for all purposes. Rather, only for the limited purposes herein discussed is such discovery extended. The court reminds the parties that unopposed discovery may continue after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions, or other pretrial preparations.

**IT IS SO ORDERED.**

---

[38]*See* D. Kan. Rule 7.4.

Dated this 28th day of November, 2007, at Topeka Kansas.

           s/ K. Gary Sebelius
          K. GARY SEBELIUS
          U.S. MAGISTRATE JUDGE