## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF KANSAS

| | |
|---|---|
| PAYLESS SHOESOURCE WORLDWIDE, INC., | ) ) ) |
| Plaintiff, | ) ) |
| | ) ) |
| v. | ) ) ) |
| TARGET CORPORATION and TARGET BRANDS, INC., | ) ) ) |
| Defendants. | ) ) |

Civil Action No. 05-4023-JAR

## ORDER

This matter comes before the court upon plaintiff's Motion to Compel Further Responses to Requests for Production of Documents, to Compel Deposition Testimony and For Sanctions (Doc. 218). Defendants have filed a response (Doc. 228) to which plaintiff has replied (Doc. 238). Also pending before the court is plaintiff's Motion to Compel Further Production of Documents (Doc. 243). Defendants have filed a response (Doc. 256) to which plaintiff has replied (Doc. 262). Finally, pending before the court is plaintiff's Emergency Motion to Stay and/or Extend Damages Expert Discovery Deadlines and Memorandum in Support (Doc. 230).

**I.    Background**.

While the lengthy and protracted procedural history of this case is well known to the parties and the undersigned, a brief recitation of the discovery practices of the parties sheds needed light on the issues presently before the court and demonstrates the necessity for the prompt completion of the parties' remaining pretrial activities.

Plaintiff initiated the instant action on February 23, 2005.  Prior to the parties' December 8, 2005 unsuccessful mediation, neither party had exchanged any written discovery or conducted any depositions.[1]   As a result of this questionable practice, plaintiff sought a sixty-day discovery extension, or until June 6, 2006, which the court granted based upon plaintiff's "meagerly" showing of good cause.[2]   During this additional discovery, the parties filed a flurry of discovery-related motions.[3]

On July 13, 2006, the undersigned conducted the parties' Pretrial Conference.[4]  As of July 13, 2006, plaintiff had yet to take a single deposition.[5]   On August  4, 2006[6] the undersigned resolved the then-pending discovery related motions and entered the parties' Pretrial Order. In its resolution of these pending motions the court "reluctantly" permitted the parties an additional sixty (60) days of discovery, or until October 3, 2006.[7]   At the time, the court noted that it did:

> not take the decision to allow additional discovery in this matter lightly.
>
> However, because the court can permit the parties the 60 additional days of discovery *without impacting the current trial setting*, and with *minimal impact on the schedule for submission of dispositive motions*, the court finds that there is little risk of delay in the

---

[1]Memorandum and Order (Doc. 45) at p. 2.

[2]*Id.*

[3]Defendants' Motion to Compel (Doc. 78); plaintiff's Motion to Extend Deadline for Disclosure of Expert Witnesses (Doc. 48); plaintiff's Motion for Protective Order, Emergency Stay, to Compel Production of Documents, and to Extend Discovery (Doc. 60); and defendants' Motion to Compel Production of Documents (Doc. 65), to which plaintiff filed a cross-Motion for Protective Order (Doc. 69).

[4]Minute Entry (Doc. 77).

[5]Memorandum and Order (Doc. 79) at p. 7.

[6]*See id.*; Memorandum and Order (Doc. 78)

[7]*Id.*

2

speedy determination of this matter or of prejudice to defendants as a result of the instant decision to extend discovery.[8]

In resolving the then-pending motions, the court also noted plaintiff's various procedural failures including a failure to adhere to the meet-and-confer requirements of D. Kan. Rule 37.2 and plaintiff's untimely responses to defendants' Second Request for Production and unfounded boiler-plate objections to defendants' Third Request for Production.

During the sixty (60) days of additional discovery the parties filed another flurry of discovery-related motions.  On November 15, 2006, the court granted in part and denied part plaintiff's Motion to Compel (Doc. 98) and required defendants to produce witnesses to testify about plaintiff's Rule 30(b)(6) topics 36-41, related to certain financial matters.[9]  Notably, the court did not extend discovery for all purposes, but merely permitted limited discovery regarding these topics. On December 7, 2006, the parties filed a joint motion seeking to postpone defendants' 30(b)(6) depositions until the court had resolved several pending motions regarding similar  document requests.[10]

---

[8]Memorandum and Order (Doc. 79) at p. 8 (emphasis added).

[9]Memorandum and Order (Doc. 142).

[10]*See* Joint Emergency Motion to Reset Scheduling Deadlines For Deposition of Target Witness on 30(b)(6) Topics 36-41 (Doc. 165).

On June 26, 2007 the court resolved the remaining pending discovery motions.[11]  The court compelled production of "*any* documents in [defendants'] care, custody and control responsive to plaintiff's Third Request for Production Nos. 10-12 and 16-24" and "*any* documents in [defendants'] care, custody and control responsive to plaintiff's Fourth Request for Production Nos. 3, 5-9, 12, 13, 14, 18, 19, 22, 23, 24 and 27" and required the parties to conduct the 30(b)(6) depositions ordered in the court's previous Memorandum and Order (Doc. 142).[12]  The court, however, denied defendants' Motion to Compel (Doc. 132) and plaintiff's Motion to Compel (Doc. 120) as untimely filed pursuant to D. Kan. Rule 37.1(b) noting that the parties "had every reason to believe that the court, in an effort to propel the parties toward the conclusion of discovery, would strictly enforce D. Kan. Rule 37.1(b) which is designed to prompt the *timely resolution* of discovery matters."[13] Indeed, to that end the court expressly ordered that

> discovery is not extended for all purposes . . . .  Rather, only for the limited purposes herein discussed is such discovery extended.  Should a party believe that further discovery not currently the subject of a pending motion is warranted, the parties should make a reasonable

---

[11]Plaintiff's Motion to Compel Testimony Regarding Late Produced Documents (Doc. 109); plaintiff's Motion to Compel Additional 30(b)(6) Testimony and Related Documents (Doc. 123); defendants' Motion to Compel Testimony (Doc. 132); plaintiff's Motion to Compel Additional 30(b)(6) Testimony and Documents Responsive to Payless's Third Requests for Production (Doc. 120); plaintiff's Motion to Compel Responses to its Third Requests for Admission and Fourth Requests for Production (Doc. 128); the parties' Joint Emergency Motion to Reset Scheduling Deadlines for Deposition of Target Witness on 30(b)(6) Topics 36-41 (Doc. 165); and defendants' Motion for Extension of Time of Summary Judgment Deadline (Doc. 118).

[12]Memorandum and Order (Doc. 181) at p. 46-47.  Defendants sought review (Doc. 184) of the court's order only as is related to production of documents responsive to plaintiff's Third Request for Production No. 17.  That Motion for Review (Doc. 184) was denied recently by the Honorable Julie A. Robinson.  *See* Text Entry (Doc. 257).  Plaintiff sought review of the court's order as it pertained to denial of further 30(b)(6) testimony.  Judge Robinson upheld the undersigned's decision on that issue.  *See* Sealed Memorandum and Order (Doc. 207).

[13]Memorandum and Order (Doc. 181) at p. 10 (emphasis added).

effort to confer so as to resolve this issue.  If the parties are unable to resolve this dispute, the party seeking further and separate discovery may file a motion to extend discovery so as to address that separate issue.  The court, however, *discourages this practice*.[14]

On July 10, 2007, upon plaintiff's motion, the court allowed plaintiff to depose two Target employees based on documents plaintiff had recently obtained from a third party.  However, the court did so only after finding that these additional depositions would not disrupt the parties' remaining limited discovery or pretrial deadlines.

Subsequently, upon a joint motion, the court extended the parties' remaining damages discovery, namely the deadline for production of responsive documents ordered in the court's June 29, 2007 order and subsequent damage expert disclosures and depositions.[15]  In consultation with Judge Robinson's chambers, the court set the parties' dispositive motion deadline for December 28, 2007 and the trial date for November 18, 2008, a full eleven (11) months later.  The court again reiterated that discovery had not been extended for all purposes, rather only for those specifically listed in the order.  The court further noted that:

> the remaining damages discovery would not likely impact the nature of the parties' dispositive motions and responses thereto. To that end, an extension of the parties' dispositive motion deadline so as to allow for this discovery regarding damages is not necessary.  However, because the parties have agreed to these various deadlines and because . . . the district judge is amenable to the parties' proposed dispositive motion deadline, the court will grant the instant motion.

On August 15, 2007, defendants produced 22,000 pages of documents concerning certain financial information relevant to document requests compelled by order of this court.    On September 15, 2007, the parties were scheduled to conduct defendants' Rule 30(b)(6) depositions

---

[14]*Id.* at p. 47 (emphasis added).

[15]Amended Scheduling Order (Doc. 201).

regarding topics 36-41 pertaining to financial and business matters.  However, three days before, on September 12, 2007, plaintiff learned that its designated damages expert, Charles E. Finch, had a conflict of interest and was withdrawing.  On September 28, 2007, plaintiff sought permission to substitute its damage expert (Doc. 204) and sought to stay the outstanding discovery (Doc. 206) pending the undersigned's resolution of the damages expert issue.  On November 28, 2007, the undersigned permitted plaintiff to substitute its damages expert, and again reset the parties' remaining discovery deadlines, this time providing the parties until April 16, 2008 to file any dispositive motions and maintaining the parties' November 18, 2008 trial date.

## II.    Motion to Compel (Doc. 218).

On December 12, 2007, plaintiff filed the present motion to compel further discovery responses to certain requests for production already ordered by the court and to take depositions of additional employees of defendants.  After various extensions sought by the parties[16] and granted by the court, this motion is now fully briefed.

Plaintiff seeks (1) production of documents responsive to plaintiff's Third Request for Production No. 20 and its Fourth Request for Production Nos. 5-9;[17] (2) depositions of newly identified witnesses disclosed through "documents produced as a result of orders of the court, including any future orders, as well as depositions of Target's 30(b)(6) witnesses concerning

---

[16]*See* defendants' Motion to Extend (Doc. 226); plaintiff's Motion to Extend (Doc. 234); plaintiff's Motion to Extend (Doc. 236).

[17]Plaintiff's motion generally asserts that defendants' responses to Plaintiff's Third Request for Production Nos. 10-12 and 16-24 and Plaintiff's Fourth Request for Production Nos. 3, 5-9, 12, 13, 14, 18, 19, 22, 23, 24 and 27 are "still woefully incomplete."  Memorandum in Support (Doc. 223) at p. 1 (emphasis in original).  However, plaintiff only seeks to compel further production of Third Request No. 20 and Fourth Request Nos. 5-9.

marketing and damages matters raised in any new documents"; (3) certification by Target that it has fully and completely fulfilled its obligations under the Federal Rules; and (4) appropriate sanctions.[18]

## A.      Requests for Production

Plaintiff argues that further relevant responsive documents "must exist" and that there are "still missing" documents from the 22,000 plus pages produced by Target in August.

### 1.      Plaintiff's Third Request for Production No. 20

Plaintiff argues that defendants' response to Plaintiff's Third Request for Production No. 20 is incomplete.

Request No. 20 seeks:

> All Defendants' monthly income statement data information for Defendants' footwear products and accessories for the time period beginning January 30, 1992, through the present including, but not limited to, Defendants':
> (a) gross revenue;
> (b) deductions from gross revenue for items such as freight,
> returns and credits, discounts, sales commissions, rebates,
> promotion incentives and all other deductions;
> © cost of sales;
> (d) operating expenses, including commissions and other selling
> expenses, marketing and advertising expenses, credit card expense,
> depreciation, research and development, bad debt expense, finance
> charges, store operations, royalty costs and all other expenses;
> (e) net income (sales revenue less expenses).

Plaintiff specifically contends that the documents produced in August did not include "the requested monthly income statement data regarding operating expenses, such as royalty costs and other expenses, including licensing fees."[19]  In turn, defendants contend that they have produced Target's monthly Merchandise Contribution Reports ("MRC") for the Jewelry, Accessories and Shoes

---

[18]*Id.* at p. 3.

[19]*Id.* at p. 9.

Division ("JAS") which constitute Target's "monthly income statement data information" for the time period 1999 to the present (shoes) and 2002 to the present (accessories).  In response to the instant motion to compel, Target affirmatively states that "[t]hese MCRs are the 'monthly income statement data information used to run the JAS Division."[20]  In its reply brief, plaintiff contends that defendants admit that the documents come solely from "the files of the head of Target's JAS Division, Don Hasek."[21]  Defendants assert in their response that "[t]hese monthly income statement documents constitute the complete financial and accounting information that Mr. Hasek relies upon to run the footwear and accessories departments at Target."[22]  Defendants further argue that they have "fully responded to Plaintiff's Third RFP No. 10" and have provided the files "actually relied upon" by the head of Target's shoe department.  Defendants admit that Mr. Hasek testified during his deposition that "there may be duplicate forms of the same information that Defendants produced located within other departments of Target, including within the Target Finance department."[23]

"Fed. R. Civ. P. 34 does not require a party to create responsive documents if they do not exist in the first instance" and "the Court cannot compel a party to produce documents that do not exist."[24]  If there are no more responsive documents, then there are no more responsive documents.  However, defendants' explanation of their search methods utilized to respond to this request has not necessarily satisfied the court.

---

[20]Response (Doc. 228) at p. 3.

[21]Memorandum in Support (Doc. 223) at p. 4; Reply (Doc. 238) at p. 1.

[22]Response (Doc. 228) at p. 3.

[23]*Id.* at p. 6.

[24]*Azimi v. UPS, Inc.*, No. 06-2114-KHV, 2007 U.S. Dist. LEXIS 49762, at * 27-28 (D. Kan. July 9, 2007)).

The court has ordered defendants to produce *all* responsive documents in their care, custody, and control responsive to this request.  If there are responsive documents located *outside* of Mr. Hasek's files which are not duplicates of those documents contained in Mr. Hasek's files, defendants shall produce any such documents in their care, custody and control.

Relevant discovery is limited by Rule 26(b)(2) when "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive[.]" Here if the documents contained outside Mr. Hasek's files are cumulative or duplicative of the documents contained in Mr. Hasek's files, defendants need not produce these duplicates.  However, to the extent that documents existing outside of Mr. Hasek's files are responsive to Request No. 20 and are not purely duplicative or cumulative of documents already produced, defendants shall produce these documents.  For example, to the extent that other departments in Target have documents containing information *additional* to or *different* from the information contained in Mr. Hasek's files, and assuming this additional or different information is responsive to these requests, then defendants shall produce these documents.

To the extent defendants find searching for responsive documents in other divisions of their company unduly burdensome, defendants failed to make such a showing in response to the underlying motion to compel, and may not rely on this argument here.  However, to the extent that no further responsive documents exist, the court will require defendants to, without objection, "serve supplemental written responses to this request unconditionally representing that no [further] responsive documents are in their possession, custody, or control."[25]

---

[25]*Manning v. G.M.*, No. 06-2504-JWL, 2007 U.S. Dist. LEXIS 89347, at * 11  (D. Kan. Dec. 4, 2007).

2.     **Plaintiff's Fourth Request for Production Nos. 5-9**

Plaintiff's Fourth Request for Production Nos. 5, 6, 7, 8, and 9 seek information regarding use and location of specific Target signage referenced in Plaintiff's Third Request for Production. Plaintiff's Fourth Request for Production Nos. 5, 6, 7, 8, and 9 seek the same information regarding exact location and use of different signage used in Target stores.

For example, Request No. 5 seeks:

> Documents sufficient to determine the number of times, exact locations and manner which the "Pay Less" sign described in Request No. 8 of Payless' Third Requests for Production has been used in footwear departments of Target stores, the number of times, exact locations and manner in which it has been used near handbags, purses, belts, watches, or other accessories in Target stores and the number of times, exact locations and manner in which it has been used in all other department of Target stores.

Defendants argue that the court's pervious order limited defendants production of these requests to only instances of consumer confusion.[26] Defendants mischaracterize the court's previous order. The full text of the undersigned's order regarding these document requests is as follows:

> [T]he court *overrules* defendants' objections as to relevancy, vagueness, confidentiality, and burdensome nature of plaintiff's requests. The court finds these requests facially relevant as they could directly relate to instances of confusion. Moreover, the court finds these requests are not facially overbroad or unduly burdensome as they relate to specific examples of potential consumer confusion. Indeed, they also are not unnecessarily duplicative as they seek information not previously sought in plaintiff's Third Request for Production. As a result, the court *grants* plaintiff's motion as to these requests.[27]

The court expressly overruled defendants' objection and granted plaintiff's motion as it related to these requests. Indeed, the court compelled production of "*any* documents in their care, custody and

---

[26]Response (Doc. 228) at p. 12.

[27]Memorandum and Order (Doc. 181) at p. 35 (emphasis added).

control" which are responsive to these requests.[28]  The court could not have been more clear that it was *not* limiting the nature of defendants' search for, or production of, responsive documents.

That said, defendants have also stated that "[w]hether or not the Fourth Set [] RFP Nos. 5-9 are construed as limited to direct instances of confusion caused by the particular signs, Defendant[s] do not have additional responsive documents that they could produce."[29]  Again, "the Court cannot compel a party to produce documents that do not exist."[30]  However, to the extent that no further responsive documents exist, the court will require defendants to, without objection, serve supplemental written responses to these requests unconditionally representing that no further responsive documents are in their possession, custody, or control.

## B.    Additional Deposition Testimony

Plaintiff has asked permission to take four additional depositions from people referenced in the documents defendants produced in August.[31]

## 1.    Standard

Whether to reopen discovery rests within the sound discretion of the court.[32] When deciding whether to extend or reopen discovery, the court should consider the following factors:

1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the forseeability of the need for additional

---

[28]*Id.* at p. 47.

[29]Response (Doc. 228) at p. 12.

[30]*Azimi v. UPS, Inc*., No. 06-2114-KHV, 2007 U.S. Dist. LEXIS 49762, at * 27-28 (D. Kan. July 9, 2007)).

[31]Memorandum in Support (Doc. 223) at p. 15.

[32]*Smith v. United States*, 834 F. 2d 166, 169 (10th Cir. 1987).

discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that discovery will lead to relevant evidence.[33]

These factors "require a balance of the liberal discovery rules and judicial economy."[34]

### 2.    Discussion

As a general matter the court notes that plaintiff has offered scant justification for reopening discovery. While trial is not "imminent", defendants have objected to the taking of these depositions at this late date and contend they will be prejudiced should the court allow further discovery. Furthermore, as detailed in the procedural history of this case, plaintiff has sought numerous extensions regarding these matters, and the court believes that had plaintiff properly, i.e. without the procedural failures discussed above, and promptly, i.e., without waiting until after the pretrial conference to depose a single witness or waiting until the end of discovery to notice 30(b)(6) depositions, plaintiff could have identified these witnesses as important deponents at an earlier time during the parties' actual discovery period.   However, the court is not blind to the fact that had defendants promptly produced these documents instead of raising unfounded boilerplate objections, plaintiff would have been in a position to evaluate the necessity of these depositions at an earlier date.   With these factors in mind, including the approaching pretrial deadlines currently in place, the court is not inclined to allow further discovery.   However, the court will turn to these discovery requests individually to determine the likelihood that these specific discovery requests will lead to relevant evidence.

### a.    Betty Thomas

---

[33]*Id.* at 170.

[34]*Talkin v. Deluxe Corp.*, No. 05-2305-CM, 2006 U.S. Dist. LEXIS 64427, at *4 (D. Kan. Sept. 8, 2006).

Plaintiff's justification for seeking to depose Betty Thomas, is simply that "[h]er name appears throughout a collection of documents [] produced concerning Target's use of LOOK SMART, another Payless mark."[35]  Plaintiff does not identify Ms. Thomas' position within Target. In fact, plaintiff does not even state that she is an employee, nor does plaintiff explain the nature of this "collection of documents."  The court can only speculate that the documents produced in August contain the names of numerous Target employees.  However, the appearance of Ms. Thomas' name alone does not by itself indicate the likelihood that her deposition will lead to relevant evidence. Without more information or context from plaintiff, the court is in no position to understand why the parties' protracted discovery should be further expanded to permit this deposition.[36]

### b.    Sarah House

As to plaintiff's request to depose Sarah House, plaintiff explains that Ms. House is a paralegal employed at defendants' law firm who requested a CSC Trademark Research Report, entitled "Dilution Search," performed on August 9, 2007.  Plaintiff contends deposing Ms. House is warranted because it "is entitled to explore the circumstances surrounding the search, the search parameters, and content contained within the report."[37]  Defendants contend that this request raises serious issues of work product immunity and attorney-client privilege and that the deposition of Ms. House would prove unnecessary because plaintiff has the self-explanatory document itself.

First, the court notes that it is not likely Ms. House would have to testify regarding "the circumstances surrounding the search, the search parameters, and content contained within the

---

[35]Memorandum in Support (Doc. 223) at p. 16.

[36]The court notes that plaintiff's reply brief sheds no additional light on the importance of Ms. Thomas' deposition.  *See* Reply (Doc. 238) at p. 9.

[37]Memorandum in Support (Doc. 223) at p. 16.

report" because such information would likely fall within the ambit of work product immunity and/or attorney-client privilege.[38]

Moreover, defendants have provided ample reason to demonstrate Ms. House's testimony is not needed at this late date and there is only a small likelihood that her testimony, if permitted, would lead to relevant evidence.  Plaintiff has the report itself which contains the search parameters used by defendants.  Indeed, since a third-party, not Ms. House, actually conducted the search the court is unclear what relevant information could be gleaned from deposing Ms. House that was not obtained through the report itself, the other numerous documents produced, or the 30(b)(6) deposition testimony taken over topics which likely encompassed this search.[39]

### c.        Further 30(b)(6) depositions

Plaintiff contends the court should permit further examination of Target's 30(b)(6) witnesses "on marketing issues regarding matters contained within the newly-produced documents."[40]  Plaintiff has provided the court with no specific "marketing issues" newly raised by the production of documents last August.  Indeed, plaintiff had these documents, and the court has afforded plaintiff

---

[38]*See e.g.*, *AIG v. Life Ins. Co. v. Johnson*, No. 95-2178-EEO, 1996 U.S. Dist. LEXIS 10634 (D. Kan. July 24, 1996)(construing a paralegal working for opposing counsel as having the right to assert attorney-client privilege, and finding that just as "[u]nder *some circumstances* a party *may* depose opposing counsel . . . [i]t logically follows that a party *may* depose a paralegal employed by opposing counsel)(emphasis added); *Equity Residential v. Kendall Risk Mgmt.*, 2007 U.S. Dist. LEXIS 84917, *19 (N.D. Ill. 2007) ("As a representative of the attorney, the attorney-client privilege extends to a paralegal acting as a subordinate to the attorney."); *Owens v. First Family Fin. Servs.*, 379 F. Supp. 2d 840, 848 (D. Miss. 2005) ("When a paralegal works on behalf of a lawyer who is representing a client, 'the attorney-client privilege applies with equal force to paralegals.'").

[39]*See e.g.*, Rule 26(b)(2).

[40]Memorandum in Support (Doc. 223) at p. 16.

the opportunity to consult with its new damages expert about these documents, prior to the taking of these 30(b)(6) depositions.  Furthermore, the court can only speculate that the documents produced in August might prompt plaintiff to seek still more requests for production and interrogatories.  Yet, allowing plaintiff to further bootstrap more discovery via the very limited discovery the court has allowed since October 2006 without any indication that such an allowance would likely lead to relevant evidence will only further delay the resolution of this matter.

     **d.**    **Dave Flaten**

As to plaintiff's request to depose Dave Flaten, plaintiff contends "Target produced an e-mail referencing a Payless ShoeSource store visit he made on August 4, 2006 during which he took photographs and gathered other information about the store.  This evidence is relevant to the issue of whether Payless and Target are competitors, among other things."[41]

Defendants note that they have already produced the complete "competitive" files maintained by Don Hasek, head of Target's shoe department.  Indeed, Mr. Hasek, Mr. Flaten's boss, acted as Target's Rule 30(b)(6) corporate representative as to topic 40, which covers "all information in Target's possession addressing the size, structure and composition of the market for footwear products and accessories as well as Target's anticipated and actual market share."  Defendants contend Mr. Hasek answered specific questions regarding this email, "including the circumstances of Mr. Flaten's visit to the Payless ShoeSource store at the Mall of America, the purpose of the visit, other visits to Payless ShoeSource stores, whether Target gets ideas for new shoes from these visits

---

[41]*Id.*

. . . and more."[42] Defendants contend that Mr. Hasek also testified to the reason provided by plaintiff as to why Mr. Flaten's testimony is relevant, namely "whether Payless and Target are competitors."

However, the adequacy of Mr. Hasek's testimony is the subject of plaintiff's other Motion to Compel (Doc. 243).  Furthermore, in this instance, unlike the other requests to reopen discovery, plaintiff has offered the context and reasoning necessary for the court to evaluate whether reopening discovery in this manner will likely lead to the discovery of relevant evidence.  Here, the court believes that deposing the actual Target employee who visited a Payless store to take photographs and compile information about Payless would likely lead to the discovery of admissible evidence in this trademark infringement case.  As a result, the court will allow plaintiff to depose Mr. Flaten.

### C.    Sanctions

Under Fed. R. Civ. P. 37(a)(4)(C) when a court grants in part and denies in part a motion to compel, the court can "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."  Whether to impose sanctions lies within the court's discretion.[43]  The court "must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[44]

Here, the court will defer ruling on the sanctions issue until after defendants have had the opportunity to supplement their document production as detailed in this order.

---

[42]Response (Doc. 228) at p. 17.

[43] *Barnes v. Akal Sec. Inc.*, No. 04-1350, 2005 U.S. Dist. LEXIS 33262, at *21 (D. Kan. December 9, 2005)(citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)).

[44] *Id.* (citing *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999)).

16

**III.**   **Motion to Compel Further Production of Documents, to Compel 30(b)(6) Deposition Testimony, for Expenses, Sanctions and a Contempt Order (Doc. 243).**

Plaintiff's motion seeks (1) production of a qualified 30(b)(6) witness, regarding the remaining 30(b)(6) topics at issue; (2) production of documents and data identified during Mr. Hasek's deposition; (3) production of documents Mr. Hasek destroyed; and (4) expenses and costs related to this motion and a contempt order.

**A.**   **Production of a prepared 30(b)(6) witness**

Plaintiff "brings [the instant motion to compel] because . . . Target offered a court compelled 30(b)(6) witness who was unprepared to testify."[45]  As a result, the only relevant inquiry before the court is whether defendants' 30(b)(6) deponent, Mr. Hasek, was "unprepared" to testify regarding the 30(b)(6) noticed topics.

**1.**   **Standard**

Rule 30(b)(6) provides in part:

A party may in the party's notice . . . name as the deponent a public or private corporation . . . and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . .   The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

"With regard to choosing a deponent to speak on behalf of the corporation, companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them fully to unevasively answer questions about the designated

---

[45]Memorandum in Support (Doc. 245) (Attachment 1) at p. 1.

*subject matter*."[46]  This duty does not require personal knowledge of the subject matter, but rather

"'implicitly requires persons to review all matters known or reasonably available to [the corporation]

in preparation for the 30(b)(6) deposition.'"[47] Thus, "to avoid liability, the noticed party must

designate persons knowledgeable in the areas of inquiry listed in the notice."[48]  To this end, "[t]he

court may find lack of preparation [of a 30(b)(6) designated deponent] to be a failure to appear" and

can sanction the entity the deponent represents.[49]

However, when the party objects to the questions posed by the examining party as outside

the scope of matters noticed in Rule 30(b)(6) "the general deposition rules govern (i.e. Fed. R. Civ.

P. 26(b)(1)), so that relevant questions may be asked and no special protection is conferred on a

deponent by virtue of the fact that the deposition was noticed under 30(b)(6)."[50] "However, if the

deponent does not know the answer to the questions *outside the scope of the matters described in*

*the notice*, then that is the examining party's problem."[51]

### 2.     The noticed topics

---

[46] *Sprint Communications v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006)(emphasis added).

[47] *Id.* at 528 (citations omitted).

[48] *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 442, 444 (D. Kan. 2000) (citations omitted).

[49] *Starlight Int'l v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999) ("[i]nadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings.").

[50] *Id.*

[51]*Id.* (emphasis added).

The court ordered defendants to provide 30(b)(6) deponents to testify regarding the following

topics:

36.    Identification, description and explanation of Target's gross and net revenue by location attributable to footwear sales and retail show store services throughout the United States, beginning two years prior to the introduction of the EMPL Mark and/or the Accused Mark.

37.    Identification, description, and explanation of Target's gross and net revenues by location attributable to each of the product or service lines that Target has promoted using the EMPL Mark and/or the Accused Marks, since the introduction of those marks.

38.    Identification, description and explanation of all other Target financial information related to footwear products and accessories beginning two years prior to the introduction of the EMPL Mark and/or the Accused Marks, including but not limited to monthly revenue by product, total quantity of units sold by product, unit price by product, monthly income statement data reflecting revenue, costs of sales, operating expenses and net income.

39.    Identification, description and explanation of all management reports, strategic plans and marketing plans for footwear products and accessories.

40.    Identification, description and explanation of all information in Target's possession addressing the size, structure and composition of the market for footwear products and accessories as well as Target's anticipated and actual market share.

41.    Identification, description and explanation of all estimates, projections, forecasts and budgets for footwear products.

Defendants designated Mr. Hasek, the head of Target's Jewelry, Accessories and Shoes division,

as their 30(b)(6) deponent on these topics.

**3.**    **Discussion**

First, the court notes the both parties have clouded the issue at hand.  The issue is not

whether Mr. Hasek could answer every question posed by opposing counsel, as argued by plaintiff.

Rather, the relevant inquiry is whether Mr. Hasek's responses to these questions demonstrated a lack

of "knowledge[] in the areas of inquiry listed in the notice."[52]  So too, plaintiff argues, with support

---

[52]*See e.g.*, *Steil*, 197 F.R.D. at 444 (D. Kan. 2000) (citations omitted).

from case law *outside* this District,[53] that Mr. Hasek was *not* required to testify as to "*any* matter known or reasonably available to Target regarding those [noticed] topics."[54] Yet, "because Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf as to all matters reasonably available to it, this Court has held that the Rule 'implicitly requires persons to review all matters known or reasonably available to [the corporation] in preparation for the 30(b)(6) deposition.'"[55] In reality, the requirements of Rule 30(b)(6) lie somewhere in between the parties' competing arguments: Rule 30(b)(6) sets a high burden of knowledge, but only regarding the noticed topics, no more and no less.  As a result, the court will consider whether Mr. Hasek was unprepared for his 30(b)(6) deposition regarding the noticed topics for which plaintiff still seeks further deposition discovery.

  **a.**   **Noticed topics 36 and 37**

  Plaintiff has not raised Mr. Hasek's testimony regarding these topics as a basis for the underlying motion.  Specifically, plaintiff states that 30(b)(6) topics other than Nos. 38-41 "are not specifically at issue in this Motion, including gross and net revenues[.]"[56] As a result, the court finds that since these topics are not the basis for the instant motion, whether Ms. Hasek was ill-prepared to testify about those topics is not before the court.

---

[53]Memorandum in Opposition (Doc. 256) at p. 7(citing *EEOC v. American International Group, Inc.*, No. 93 Civ. 6390, 1994 U.S. Dist. LEXIS 9815 at *8-9 *(D. N.Y. July 18, 1994); *Wilson v. Lakner*, 228 F.R.D. 524, 528-29 (D. Md. 2005)).

[54]*Id.*(emphasis in original).

[55]*Raytheon Aircraft Co. v. United States*, No. 05-2328-JWL, 2007 U.S. Dist. LEXIS 66156, at * 11 (D. Kan. Sept. 6, 2007)(citing *Theglobe.com*, 236 F.R.D. at 527-28 (citing *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc*., 210 F.R.D. 730, 734 (D. Ka. 2002))).

[56]Memorandum in Support (Doc. 245) at (Attachment 1) p. 10 n. 3.

**b.**      **Noticed topic no. 38**

Noticed topic no. 38 seeks:

Identification, description and explanation of all other Target financial information related
to footwear products and accessories beginning two years prior to the introduction of the
EMPL Mark and/or the Accused Marks, including but not limited to monthly revenue by
product, total quantity of units sold by product, unit price by product, monthly income
statement data reflecting revenue, costs of sales, operating expenses and net income.

During his deposition, Ms. Hasek specifically informed plaintiff's counsel that he was not prepared

to discuss certain aspects of noticed topic no. 38.

Q:      Have you come today prepared to testify concerning Topic 38?
A:      Yes.  There's details in here that we can't get to.
Q:      What details can you not get to?
A:      Accessories two years prior to the mark, the detail of doing by monthly revenue by
        product,[57] total quantity of units sold by product, unit price by product, monthly–no
        that would be it.
Q;      All right.  Let's back up first.  With respect to accessories, are you saying you don't
        have data going back to that 1992 date with respect to accessories?
A:      Correct.
Q:      How far back does your accessories data go?
A:      2002.
Q:      And why is it that the data doesn't go back in time beyond 2002?
A:      I didn't have that area.  I got it in 2002.
Q:      Was someone else responsible for that area prior to 2002?
A:      Yes.
Q:      Who would that have been?
A:      Several different people.
Q:      All right.  Did you speak to any of those people to education yourself with respect
        to information sought under Item 38 regarding accessories prior to 2002?
A:      No, they're not employed by Target anymore.
Q:      Did you do anything to locate their old files or documents or records to prepare?

_____

[57]Mr. Hasek specifically stated that no data exists concerning "revenue by product" at an
actual item level.  *See* Memorandum in Opposition (Doc. 256) at (Exhibit E)(complete transcript
of Hasek deposition) p. 37.  Thus, defendants' designated Rule 30(b)(6) representative has
testified "that the information sought is not known or reasonably available" to Target.  *See*
*Raytheon Aircraft Co.*, 2007 U.S. Dist. LEXIS 66156, at * 22-23.  To the extent this testimony
was inaccurate, defendants shall supplement their response.

A:    No.
Q:    Why not.
A:    They're not there.
Q:    You're saying the documents are not there?
A:    No.
Q:    What did you do to determine the documents were not there?
A:    If they're not in my area, they don't exist.
Q:    How do you know they don't exist by virtue of the fact that they're not in your area?
A:    I wouldn't know where they would be if they weren't in my area.  When I acquired accessories–When I acquired the division, those documents weren't made available to me and I don't have them.
Q:    Is it possible that someone else at Target does have those documents?
A:    I would doubt it.
Q:    But you don't know for a fact either way?
A:    Right.[58]

Defendants' general argument to explain this lack of preparation seems to be that Mr. Hasek is the best person available at Target to testify regarding these matters.  While that may well be true, Target's duty is not to provide the "best" person, but to prepare a deponent with all the information reasonably available to Target regarding the noticed topic at issue.  That Mr. Hasek only took over the accessories department in 2002 and that he finds it unlikely that financial information existed regarding the accessories department prior to 2002 is insufficient preparation in the instant case.  Because Target is a large corporation and in some instances might claim that the left hand doesn't know what the right hand is doing is simply insufficient, as this it the exact sort of sand-bagging technique Rule 30(b)(6) depositions were designed to avoid.   As articulated in *Sprint Communications Co., L.P. v. The.globe.com, Inc.*,[59]

Thus, Rule [30(b)(6)] makes clear that a party is not permitted to undermine the beneficial purpose of the Rule by responding that no witnesses is available who personally has

---

[58]Memorandum in Opposition (Doc. 256) at (Exhibit E)(complete transcript of Hasek deposition) p. 34-36.

[59]236 F.R.D. 524 (D. Kan. 2006).

22

> knowledge concerning the areas of inquiry.  If need be, the responding party 'must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits.'  Any other interpretation of the Rule would allow the responding corporation to 'sandbag' the deposition process.[60]

That such depositions could be onerous to the corporation- party makes little difference.

> Although the Court readily acknowledges that the requirements listed above may be onerous, the burden upon such a responding entity is justified since a corporation can only act through its employees.  These requirements negate any possibility that an inquiring party will be directed back and forth from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding upon that corporation.[61]

As a result, the court will require Target to designate one or more 30(b)(6) witnesses, if necessary, to testify regarding "accessories" as noticed in topic no. 38.  To the extent that Target has no more information regarding accessories from 1992-2002, or other aspects of topic no. 38, then Target's designated Rule 30(b)(6) representative "can testify that the information sought is not known or reasonably available to [Target]."[62]  Considering the sophistication of Target as a company, however, the court finds it unlikely that defendants do not have information known or readily available regarding this sort of financial information.

### c.      "Financial topics" generally

Plaintiff argues generally that Mr. Hasek was "not prepared to testify to a number of financial topics squarely within the scope of the 30(b)(6) notice, including those related to Target's

---

[60]*Id.* at 528.

[61]*Id.* (citations omitted).

[62]*Raytheon Aircraft Co.*, 2007 U.S. Dist. LEXIS 66156, at * 22-23.

financial production[]" but offers only a few instances "[b]y way of example" as to Mr. Hasek's lack of preparation.[63]

Specifically, plaintiff points to three primary examples of Mr. Hasek's alleged unpreparedness.

First,

> Q. If you go back and look at Exhibit 26 [Target's 2003 Annual Report], you'll notice that there is a variation between the numbers reported.
> A. Yes
> Q. Do you know why those numbers vary so much?
> A. No.
> Q. Who would know the answer to that question?
> A. Finance.
> Hasek Dep. at p. 191:6-191:13.

Second,

> Q. Do you see where it says Shoes Expense Allocation Rate?
> A. Yes.
> Q. What was the basis for the calculation of the expense allocation rate each year?
> A. You'd have to ask the person that put that report together.
> …
> Q. And I just want to clarify. You don't know precisely which expenses go into the allocation rate; correct?
> A. I don't know exactly what's in there, no.
> Q. Would somebody in your finance department know the answer to that question?
> A. Yes.
> Hasek Dep. at pp. 81:25-82:5, 82:25-83:6.

Third,

> Q. What is the source of the data that [are] provided under the Shoe Division category on Page 1 of Exhibit 2?
> A. I'm not positive. I'm assuming it's coming off that MCR report.

---

[63]Memorandum in Support (Doc. 245)(Attachment 1) at p. 11-12.

Q. Who would be able to provide a positive answer to the question I just asked?
A. Finance.
Hasek Dep. at p. 86:10-86:17.[64]

The first example of alleged unpreparedness offered by plaintiff relates to "[a]dvertising costs"[65] in one of Target's annual reports, not specifically the advertising costs of shoes or accessories.[66]  While this instance might show a lack of familiarity with certain financial matters at Target generally, plaintiff has failed to show how this question falls within the scope of noticed topics 38-41.  Without further explanation from plaintiff, the court is unclear how *advertising* costs for Target as a *whole* reasonably falls within "[i]dentification, description and explanation of" "all other Target financial information related to *footwear products and accessories*" (topic 38) or "all management reports, strategic plans and marketing plans" (topic 39) or "all information in Target's possession addressing the size, structure and composition of the market for *footwear products and accessories*" (topic 40) or "all estimates, projections, forecasts and budgets for *footwear products*" (topic 41).  It seems more likely that this question could fall under the scope of noticed topics 36-37, related to gross and net profits, but as the court previously discussed, these topics are not the basis for the underlying motion to compel.

Similarly, several other instances of alleged unpreparedness footnoted by plaintiff in its Memorandum in Support relate to matters irrelevant to the noticed topics herein compelled, such

----

[64]*Id.*

[65]Memorandum in Opposition (Doc. 256) at (Exhibit E)(completed transcript of Hasek deposition) p. 190-91.

[66]*See also* Memorandum in Support (Doc. 245) at (Attachment 1) p. 12 n. 6. (citing pgs. 104)(relating to financial topics generally and not about shoes or accessories).

as who sends Mr. Hasek the MCR reports,[67] or the existence of other documents,[68] which the court will later address.

In contrast, the second and third examples listed as primary examples of Mr. Hasek's lack of preparation relate to Mr. Hasek's inability to answer questions related to Exhibit 2, a "summary chart of *footwear revenues* and *expenses* prepared by Defendants for this litigation."[69]   Indeed, Mr. Hasek was also unable to answer additional questions regarding Exhibit 2.  Specifically:

> Q:      Why is there such a variance between the number contained within the MCR report as opposed to Exhibit 2?
> A:      They're a difference number.  You have contribution, adjusted contribution, which is on these reports the reason these are so important to the merchants is this is what our reviews are based on.
> . . . .
> Q:      What numbers are taken out of the pretax operating contribution?
> A:      I'm not sure what all the other numbers are that are taken out.
> Q:      Again, would that be finance who could tell me?
> A:      That would be finance.[70]

Additionally:

> Q:      So that would also be why the net income numbers don't [m]atch [from Exhibit 2 and Exhibit 3]?
> A:      Well, there isn't a net income on the contribution report.
> Q:      That's true.  All right.
> A:      And really it answers a question of mine now, too.  If you look at the sales and the gross margin, they don't match.  The sales and gross margin numbers on the report that was prepared to [sic] you in Exhibit Number 2 are higher[.] [M]y assumption is because it does include Target.com and the MCR does not include it.

---

[67]Memorandum in Opposition (Doc. 256) at (Exhibit E)(completed transcript of Hasek deposition) at p. 40-42.

[68]*Id.* at p. 76; 197.  The noticed topics did not inquire into defendants' document retention policies.

[69]Memorandum in Opposition (Doc. 256) at p. 9 (emphasis added).

[70]Memorandum in Opposition (Doc. 256) at (Exhibit E)(completed transcript of Hasek deposition) p. 137-38.

Q:      But to confirm that we'd need to talk to finance?
A:      You'd have to talk to finance.
. . . .
Q:      All right.  Take a look at Exhibit 2 on the first page.  What line items are required to
        calculate the shoe expense allocation rate?
A:      I don't know.
Q:      Can we calculate the rate by dividing the target operating expense by the shoe
        division operating expense to get that calculation?
A:      I don't know how they're getting it.
Q:      All right.  Again, finance would be able to tell us that?
A:      Right.[71]

Defendants would have the court believe that Mr. Hasek's inability to answer queries regarding this single document, out of over 22,000 documents produced, does not necessarily mean he was unprepared.  However, plaintiff did not pull Exhibit 2 out of thin air or select it *ad hoc* from the 22,000 documents in an attempt to prove Mr. Hasek was somehow unprepared for this deposition.  As defendants explain themselves, defendants, or their counsel, created this document for the purpose of aiding Mr. Hasek in this very deposition.  That Mr. Hasek could not answer specific questions regarding *discrepancies* in this document is not a matter of mere quibbling over the minutia of Mr. Hasek's deposition testimony.  These questions regarding Exhibit 2 fall within the financial topics noticed, namely "[i]dentification, description and explanation of all other Target financial information related to footwear products" as sought in noticed topic no. 38.

As a result, the court will require defendants to produce a 30(b)(6) deponent regarding accessories in noticed topic no. 38 and the financial topics Mr. Hasek was unable to answer during his deposition related to "[i]dentification, description and explanation of all other Target financial information related to footwear products" in topic no. 38, particularly in relation to Exhibit 2.  Any other instances where Mr. Hasek was allegedly unable to answer defendants' questions either do not

_____

[71]*Id.* at p. 140-42.

fall under any of the noticed topics at issue or were not adequately brought to the court's attention.[72]

**B.   Further Production of Documents**

Plaintiff also argues that during his deposition, Mr. Hasek "identified at least twenty-seven (27) types of documents that are not only discoverable, but also are responsive to Payless' discovery requests, namely Request Nos. 16-24 of Payless' Third Request for Production" for which the court has ordered Target to respond.[73]

Defendants characterize the documents plaintiff seeks as follows:

Group One holds items b, c, d, e, f, g, h, q and x, consisting of items where Defendants have already produced what Plaintiff requested but Plaintiff seeks "all documents relating to" the subject and not just what Plaintiff actually requested. Group Two holds items I, j, k, l, m and p, consisting of items related to the litigation summary prepared by Defendants, "Exhibit 2." Group Three consists of fishing expeditions for documents mentioned by Mr. Hasek but only tangentially (if at all) requested, items a (lots of emails), w (email and more from higher up in Target corporate), t (short monthly report using data also in reports produced), u (competitive information not referencing Payless ShoeSource), v (same but includes PSS) and aa (calculation of shoe sales per square foot). Group Four consists of items that may have been requested long ago in discovery, Defendants produced the requested items, but Plaintiff still thinks there may be more on the same subjects, such as items n (TBI finances), o (license agreements), s (circular expense allocation), y (store signage placement directions) and z (a survey concerning Target shoe quality). Finally, Group Five consists of one item that simply does not make sense, item r (company-wide deductions that Plaintiff has made irrelevant).[74]

Plaintiff may not use Mr. Hasek's deposition as a means of reopening all discovery and bootstrap to Mr. Hasek's deposition additional document requests they never sought in the first

---

[72]*Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)(citing *Accord United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)("Judges are not like pigs, hunting for truffles buried in briefs.")).

[73]Memorandum in Support (Doc. 245) (Attachment 1) at p. 13-14.

[74]Memorandum in Opposition (Doc. 256) at p. 13.

instance. The court will not allow plaintiff to essentially re-write its previous document requests now at this late date based on mere passing references made by Mr. Hasek.

That said, the court will also not allow defendants to side-step their obligations to provide responsive documents simply because these other documents exist in another department or because defendants believe locating these documents within their own company is too burdensome. Defendants failed to make a sufficient showing as to burden in response to the original motion to compel production of these documents, and as a result may not rely on this argument here.

Because the court is not convinced by defendants' response to this motion that all responsive non-cumulative documents to Request Nos. 16-24 have been produced, the court will require further clarification from defendants.  As the court has previously addressed in this order, if there are responsive documents located *outside* of Mr. Hasek's files which are not duplicates of those documents contained in Mr. Hasek's files, defendants shall produce any such documents in their care, custody and control.  If the documents contained outside Mr. Hasek's files are cumulative or duplicative of the documents contained in Mr. Hasek's files, defendants need not produce these duplicates.  However, to the extent that documents existing outside of Mr. Hasek's files are responsive to discovery Request Nos. 16-24, and are not purely duplicative or cumulative of documents already produced, defendants shall produce these documents.  For example, to the extent that other departments or divisions in Target have documents containing information *additional* to or *different* from the information contained in Mr. Hasek's files, and assuming this additional or different information is responsive to these requests, then defendants shall produce these documents.

To the extent that no further non-cumulative responsive documents exist, the court will require defendants to, without objection, "serve supplemental written responses . . . unconditionally

representing that no [further] responsive documents are in their possession, custody, or control"[75] regarding Request Nos. 16-24.

## C.    Allegedly "destroyed" documents

Plaintiff contends that Mr. Hasek's deposition revealed that he had destroyed certain documents responsive to plaintiff's discovery requests.  Upon review of Mr. Hasek's deposition, the court is not persuaded that Mr. Hasek destroyed relevant non-cumulative documents in an improper manner.  Further, the court believes that if other non-cumulative responsive documents exist, which plaintiff believes Mr. Hasek "destroyed" but for which plaintiff also apparently believes defendants can find in another department, the court's requirement that defendants supplement their responses to Request Nos. 16-24 should cure any claimed prejudice to plaintiff.

## D.    Sanctions

As with plaintiff's other motion to compel, the court will defer ruling on the sanctions issue until after defendants have had the opportunity to supplement their document production as detailed in this order.  That the court is ordering defendants to produce a Rule 30(b)(6) deponent to testify regarding one noticed topic is not enough in this instance for the court to order sanctions in this matter.  However, the court will consider defendants' failure to properly prepare Mr. Hasek when evaluating the imposition of sanctions at a later date.

## IV.    Conclusion.

In conclusion, the court is aware that "[a]t first blush the court's rulings [on both motions to compel] may appear harsh.  However, when the totality of the circumstances are taken into account,

---

[75]*Manning v. G.M.*, No. 06-2504-JWL, 2007 U.S. Dist. LEXIS 89347, at * 11  (D. Kan. Dec. 4, 2007).

the inescapable conclusion is that limits must be imposed so that this case can be finally resolved, either by summary judgment motion, settlement, or trial."[76]

## V.   Emergency Motion to Stay and/or Extend Damages Expert Discovery Deadlines and Memorandum in Support (Doc. 230).

The parties state that they intended to suspend completion of their remaining pretrial activities pending the court's ruling on the plaintiff's Motions to Compel.  However, the parties have disclosed their damages experts and their reports and in their Joint Motion to Reset Scheduling Deadline for Dispositive Motions (Doc. 258) proposed a reasonable extension to accommodate the completion of pretrial activities, which the Honorable Julie A. Robinson has adopted (Doc. 263). Accordingly, and in light of the court's decisions in the instant Memorandum and Order, and following the deadlines adopted by Judge Robinson regarding the parties' dispositive motion deadline, the court grants in part the motion.

IT IS THEREFORE ORDERED that plaintiff's Motion to Compel Further Responses to Requests for Production of Documents to Compel Deposition Testimony and For Sanctions (Doc. 218), Motion to Compel Further Production of Documents (Doc. 243), and Emergency Motion to Stay and/or Extend Damages Expert Discovery Deadlines and Memorandum in Support (Doc. 230) are granted in part and denied in part.

IT IS FURTHER ORDERED that the following remaining schedule shall be adopted by the parties:

(1)   By **April 22, 2008**, defendants shall either supplement their document production responsive to plaintiff's Third Request for Production No. 20 and Fourth Request for Production Nos. 5-9 and/or shall, without objection, serve supplemental written

---

[76]*Blase v. AT&T Corp*., No. 02-1281-MLB, 2005 U.S. Dist. LEXIS 34518 (D. Kan. 2005) (denying plaintiff's request to again reopen discovery).

responses to these requests unconditionally representing that no further responsive documents are in their possession, custody, or control.  By **April 22, 2008** defendants shall also produce any such responsive documents and/or any such written supplementation to the court so that the court may evaluate whether the imposition of sanctions is proper.[77]

(2)     By **April 22, 2008**, defendants shall either supplement their document production responsive to plaintiff's Third Request for Production Nos. 16-24 and/or shall, without objection, serve supplemental written responses to these requests unconditionally representing that no further responsive documents are in their possession, custody, or control.  By **April 22, 2008** defendants shall also produce any such responsive documents and/or any such written supplementation to the court so that the court may evaluate whether the imposition of sanctions is proper.

(3)     By **April 15, 2008**, defendant shall designate a Rule 30(b)(6) deponent to testify regarding noticed topic No. 38 and this deposition shall take place by **April 29, 2008.**

(4)     Defendants shall make Dave Flaten available for deposition by plaintiff before or on **April 22, 2008.**

(5)     Both parties shall supplement their Rule 26(e) disclosures and their responses to any discovery requests either not objected to, or for which the court has compelled production, by **May 1, 2008.**

(6)     Discovery for the limited purposes of deposing the parties' experts and or supplementing the experts' reports pursuant to Fed. Rule Civ. P. 26(a)(2) is extended until **May 8, 2008**.

(7)     As directed by Judge Robinson, the opening briefing/submission for dispositive motions is due by **May 15, 2008**, opposition briefing/submissions for dispositive motions is due by **June 9, 2008**, and the reply briefing is due by **July 2, 2008**.[78]

(8)     The parties' trial date remains **November 18, 2008.**

IT IS SO ORDERED.

---

[77]Plaintiff shall not file another motion seeking sanctions regarding these motions to compel.  The parties have briefed the issue and the court will only require these submissions by defendants to determine whether sanctions are appropriate.

[78]*See* Order (Doc. 263).

Dated this 8th day of April, 2008.

                                        s/ K. Gary Sebelius
                                        K. Gary Sebelius
                                        U.S. Magistrate Judge